THE TOWNS OF WINDHAM AND CHAPLIN *vs.* LITCHFIELD
AND OTHERS.

Where the county commissioners met, for the purpose of hearing a petition for a highway, on a day appointed by the court, for that purpose, and nearly a month afterward, the court allowed an amendment of the petition, which varied some of the intermediate points, at or near which it was proposed to be built, but did not alter its general route, or vary its *termini,* and said commissioners, at the same term of the court, subsequently, made their report, laying out a highway, as prayed for in such amended petition, stating therein, that they had viewed said highway, and heard the parties and all persons interested in said petition, which report was accepted by the court; it was held, 1. That said amendment was within the meaning of the statute relating to " civil actions," (Sec. 102,) and that the allowance of the same was discretionary with the court; 2. That it was no ground for setting aside such report, that said amendment was allowed at so late a stage in the proceedings ; 3. That the fact, that the time fixed for the commissioners to meet, was prior to the session of the court at which such amendment was allowed, was not of itself sufficient to show, that the respondents had no fair opportunity to be heard, on the subject of such petition, especially, as such inference was directly contradicted by the report.

Irregular and improper conduct, on the part of county commissioners, can not be made out by inference, but if such exists, the same must be directly alleged, and proved.

An application to the county court, to lay out a highway, from a point in one town, to a point in another, was referred to the county commissioners, who made their report, laying out, in two separate and distinct parts, portions only of the highway prayed for, one of which parts was wholly within one of said towns ; held, that the county court had jurisdiction of said petition, in the first instance, without a previous application to the selectmen of the town within which a part of said highway was wholly situated, and that the statute did not require the court, either to lay out the whole road prayed for, or to dismiss the petition.

THIS was a petition, brought to the August term of the county court, for Windham county, 1850, by Andrew J. Litchfield and others, praying for a new highway, to be laid out and established, from the town of Chaplin, to the village of Willimantic, in the town of Windham. At the same term of the court, the petition was referred to the county

commissioners, who were directed, by said court, to meet, for the purpose of hearing and deciding the same, on the 18th day of November, 1850. At the next term of said court, holden in December following, the petitioners moved an amendment to the petition, changing the location of the proposed highway, at certain intermediate points between its *termini.* To the allowance of such amendment, the town of Chaplin consented, but the town of Windham objected ; the court overruled the objections, and allowed the amendment. At the same term of the court, after the allowance of the amendment, the commissioners made their report, stating therein, that they proceeded to view said proposed highway, and inquired into the common convenience and necessity thereof, and having heard the parties and all persons interested in said petition, found those portions of said proposed new highway thereafter laid out by them, to be of common convenience and necessity ; and thereupon laid out two separate portions of said proposed highway, one of which lay wholly in the town of Windham, and the other in the town of Chaplin. Against the acceptance of this report, the town of Windham, one of the respondents, remonstrated, stating, as grounds of remonstrance, the following matters, viz. ·

1. That the petition prayed, that a highway be laid out in the town of Chaplin ; that, when it was served on the towns of Windham and Chaplin, and at the August term of the county court, 1850, when an order was made, fixing the time and place for the meeting of the commissioners, and when said commissioners met, to act, it prayed for no other road to be laid out and established, and in no other direction, than the one originally embraced therein ; that, at the December term of said court, 1850, said petition was, without consent of the inhabitants of said town of Windham, or of any one authorized to act or agree in their behalf, and after remonstrance duly interposed by said town, amended and altered, in a material point, which amendment was allowed by the

court; that after said amendment was allowed, the commissioners made their report to the court, laying out said road, and that a large portion thereof, in said town of Chaplin, was laid over ground not embraced in said petition, prior to the time when it was so amended, and whereon, until the time of such amendment, they had no power or authority by law, to lay said road.

2. That, in order to lay out said road, as prayed for, by both said original and amended petitions, it was necessary to terminate the eastern section of the same, at the west end thereof, at the dividing line, on the east side of the town of Mansfield, in the county of Tolland, a portion of said town of Mansfield extending southerly, to a great distance, between the eastern and western sections of said road, as prayed for in said petition; that the western section of the road prayed for and laid out, was wholly within the town of Windham, and entirely separated from any portion of said road, as prayed for and laid out, easterly of said Mansfield; that the power of laying out that portion of said road, lying westerly of said Mansfield, between the same and the village of Willimantic, belonged, by law, to said Windham, and it had no connection with the eastern portion, but was separated therefrom, by a portion of the county of Tolland, and neither the county court, nor said commissioners, had jurisdiction in the matter, until after application duly made to the selectmen of said Windham, and their refusal so to lay out the same, and that no application had ever been made to said selectmen, to lay out the same, nor had they ever refused so to do.

n answer to this remonstrance, the petitioners averred, that, as to the first objection, the same was insufficient in the law; and that the allegations stated in the second objection were in part, untrue, or if true in part, were insufficient in the law.

Upon the issues thus formed, the court accepted the report, and found, that the first ground of remonstrance was

insufficient in the law ; and, in relation to the second ground, found the following facts : that there was no absolute and positive necessity for laying out the highway prayed for in the petition, either before or after the amendment, in such manner that the eastern section of the same, at the west end thereof, should terminate at the dividing line of the east side of said town of Mansfield ; but that said road might have been laid out in said towns of Chaplin and Windham, though by a route of great circuity, had the commissioners deemed it expedient so to do, and also, that the whole of the western section of said road, as laid out, lay in the town of Windham, and was entirely disconnected with the other section of said road, as laid out, and that the selectmen of said town of Windham had never been petitioned or requested, in any manner, to lay out any highway over or near said route in said Windham ; and that the facts, as set forth, were insufficient in the law, to authorize the court to reject and set aside the report. The report having been accepted by the court, the towns of Windham and Chaplin, the original respondents, thereupon brought a writ of error to the superior court, at its October term, 1851, when the questions arising thereon were reserved for the advice of this court.

*Welch* and *Carpenter*, for the plaintiffs in error, contended, 1. That the amendment allowed by the county court, *changed the ground* of action, and therefore could not be legally allowed. *Peck* v. *Sill*, 3 Conn. R., 157. *Peck* v. *Bacon*, 18 Conn. R., 377. The report, without amendment, could not be accepted, in part. It must be *accepted* or *rejected*, entire. *Winchester* v. *Hinsdale*, 12 Conn. R., 88. The commissioners had never viewed the proposed road, after the amendment was allowed, and the plaintiffs in error have had no opportunity to be heard.

2. That each section of said road was laid out, entirely, in one of the towns of Windham and Chaplin, and the report therefore, showed no necessity of a road from town to town.

The selectmen of the towns must be first required to lay out the same, before application to the county court. Stat., 1849, p. 422.

*A. A. Burnham,* for the defendants in error, contended, 1. That the allowance of an amendment, in a particular case, within the general power of the court, is not a ground of error. *Merriam* v. *Langdon,* 10 Conn. R., 460. It is the plaintiff's right, to make any amendment, at any time, which does not change the form or ground of action, subject to the payment of costs, after the first three days, at the discretion of the court. Stat., 1849, p. 77. Whether this amendment did change the ground of action, must, *from its character,* depend upon the facts, as they appeared before the county court, on the motion to amend. Nothing appears upon the record, to show that the ground of action was changed, or that the route of the road, as prayed for, was essentially changed, by the amendment.

2. That the amendment affected only that portion of the road located in Chaplin, and that town having, upon the record, agreed, that the same might be made, can not, now, repudiate such agreement. The town of Windham has no right to complain of an act done by virtue of such an agreement, her interests not being at all affected thereby. *Windsor* v. *Field,* 1 Conn. R., 283. The interests of the two towns, as to the location of the road in their respective limits, are entirely separate and distinct.

3. That the petition asked for a road running from a point in the town of Chaplin, to a certain point in the town of Windham, and as such, was clearly within the jurisdiction of the county court, although the towns had not been first applied to. Stat., 1849, p. 422. The commissioners are not bound to follow minutely the route described in the petition : they must take the *general* route prayed for, but may exercise their own judgment, as to the particular location of any portion. *Windsor* v. *Field,* 1 Conn. R., 279.

HINMAN, J. We think the amendment of the petition, allowed by the county court, in this case, did not change the ground of action, within the meaning of the statute "for the regulation of civil actions," (§ 102;) and was, therefore, within the discretionary power of the county court. The effect of the amendment was not to change the general route or *termini* of the road prayed for, but only to change some of the intermediate objects mentioned in the application, as points to, or near, which it was proposed the road should be built. Both in the original and in the amended petition, a new road was asked for, from the same point in Chaplin, to or near the depot in Willimantic; and to obtain this was the general object of the petition. The intermediate points were mere incidents to this general object; whether it would be proper for the road to strike one or more of them, did not depend so much upon the necessity of the road itself, between the *termini*, as upon a variety of other circumstances,—such as the nature of the ground, and the value of it, which would have an important bearing upon the expense of building the road,—so the probable accommodation it would give to the public travel to any intermediate village, or place between Chaplin and Willimantic, would be a proper circumstance to be considered. Undoubtedly these circumstances have an important bearing upon the question, as to the necessity for the new road, but they are rather incidental to the general object, which was, as we have said, to obtain a new road from Chaplin to the village of Willimantic; and, in applications of this sort, to tie up the parties and the commissioners, so as to make it necessary to strike every intermediate monument mentioned in the petition, without any possible relief, by amendment, or otherwise, would be vexatious in practice, and, we think, wholly unnecessary. It is claimed, however, that the amendment was allowed, at too late a stage of the proceeding, after the hearing before the commissioners. Hence, it is inferred, that the commissioners never viewed or examined

the route proposed in the amended petition, and the plaintiffs in error had no opportunity to be heard thereon. That the commissioners did not examine the road, which they surveyed and laid out, is a fact which can not be made out by inference, in such a case as this, where the report of the commissioners shows that they did examine it. The inference is directly contradicted by the report, and, in regard to the claim, that the plaintiffs in error had no opportunity to be heard before the commissioners; on the route where the road was laid, that, too, is contradicted by the presumption, that the commissioners acted fairly and not corruptly ; and to infer, that they gave the plaintiffs no fair opportunity to be heard before them, would be an impeachment of their integrity, which ought not to be made out, by inference. Nor is it to be presumed, that a claim of that sort would not have been made to the county court, if there was any foundation for it, in fact. It resolves itself, therefore, into a question, whether the fact, that the time fixed for the commissioners to meet on this subject, was prior to the session of the county court, at which the amendment was made, is itself sufficient to show, that the parties had no fair opportunity to be heard on the subject matter of the application. The meeting of the commissioners was fixed for the 18th of November, and they met on that day. That was about a month before the term of the court, at which the amendment was made ; but how long they were engaged in the examination, does not appear. The record only shows, that after the amendment was made, " they came into court, and made their report." We do not, however, rely on this circumstance. The amendment related back to the commencement of the suit, and the petition, in the judgment of law, was, from its commencement, as it is now. It is true, this is a fiction of law, and, for that reason, would not be suffered to operate unjustly upon the respondents ; and could they have shown to the county court, either that the commissioners had not examined the road prayed for, or had not suffered them to be heard upon

it, that would have been such " irregular and improper con-
duct" on the part of the commissioners, as would have re-
quired that their report be set aside ; and for the very rea-
son, that it is "irregular and improper conduct," it ought
not to be made out by inference, but should be alleged and
proved.

But, again, it is claimed, that, as the commissioners did
not lay out the whole road prayed for, and, as what they did
lay out, was not one continuous portion, extending into both
the towns of Chaplin and Windham, but, on the contrary,
they laid out two separate and distinct parts of the road,
and in such a manner that the southern or eastern portion
was all of it in the town of Windham, therefore in re-
gard to this portion of the road, the selectmen alone had
jurisdiction, in the first instance, to lay·it out; on the
ground, that it was not a road from town to town, or
from place to place in different towns, which might be acted
upon by the county court, in the first instance, without any
previous application to the selectmen. This is not an ob-
jection to the jurisdiction of the county court, as the case
was presented by the plaintiffs, in their petition. The pe-
tition asked for a new highway from Chaplin to the village
of Willimantic, which was from "town to town," within the
letter and meaning of the statute on this subject, and not
from place to place, within the same town. Stat., 1849, pp.
422, 424. The county court, then, having jurisdiction of
the application and the subject matter of it, were not, as
we think, so bound by the application, that they must lay out
the whole road, or dismiss the cause altogether. Such a
construction of the statute would be unreasonable. Undoubt-
edly it must be a case where a road is wanted from town to
town, in order to justify an application to the county court ;
and if it appeared here, that the road laid out, or either part
of it, was not wanted, as a part of such road, that might be
a ground on which the county court might dismiss the

case. But we do not think this fact appears, from the mere circumstance, that the road is laid out in separate, distinct parts, some of which are located wholly in one of the towns. If it was not possible, in the nature of things, that pieces or parts of new road, thus located, should, when completed, form, with other means of communication, one continuous road from place to place, there might be ground for the objection. But it is obvious this is not so. Two parts of the same road may be separated by a navigable stream, and connected only by a bridge or ferry, over which the towns have no control. This would not prevent an application to the county court, to lay out such a road, although the two parts might each be in a single town. So the two separate parts, as we suppose was the case here, might be connected with other roads, already built, in such a manner, that the separate parts, with the roads already established, would form one continuous road from town to town. We see no objection, in such a case, to an application to the county court, to lay out such parts or pieces of road. So far as the required road, from town to town, has already been built, there is no necessity for laying it out a second time ; and, so far as the new parts are concerned, they may not be required or needed, as mere town roads. We think, then, that in such cases, it is proper to apply to the county court, in the first instance.

It is to be borne in mind, that the original application here, was for a road from town to town. As such, it was referred to the commissioners, and, as such, they reported upon it, finding different parts of it necessary, and other parts not necessary.

For what reason some portions of it are not required, the commissioners do not say, and, of course, it does not appear. It may be for a reason perfectly consistent with the fact, that the two parts are wanted, as connecting links in a **road,** such as was asked for from Chaplin to Willimantic,

and, as the two parts were laid out under such an application, it must be presumed they were wanted for that purpose. If such was not the fact, we think the defendants should have alleged and shown it.

We, therefore, advise the superior court, that there is no error in the judgment of the county court.

In this opinion, the other judges concurred.

Judgment affirmed.